**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No.: 2:14-CR-17 |
| LINDA ROSENBERG | |

**OPINION AND ORDER**

Petitioner Linda Rosenberg filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct her sentence. (DE 55.) She claims ineffective assistance of counsel and violation of due process.

**A. Background**

At all relevant times, Petitioner was a doctor practicing in Indiana. The government charged her with participating in a kickback conspiracy involving her medical practice, Medicaid, and Medicare (Count 1); dispensing narcotics without legitimate medical purpose (Count 2); and misbranding of a drug (Count 3).

Petitioner entered into a plea agreement filed on February 28, 2014. (DE 2.) The plea agreement provides for a three-level reduction based on acceptance of responsibility, and for a potential recommendation by the government of an unspecified-level downward departure, contingent on Petitioner fulfilling the terms of the plea agreement, and not engaging in any conduct inconsistent with her agreement to cooperate and accept responsibility. The plea agreement also states that if Petitioner violates her continuing obligation to demonstrate acceptance of responsibility, the government may either:

1) ask the Court to determine that she breached the agreement in which case she would lose the benefit of all non-binding promises and would have no right to withdraw her guilty plea; or

2) ask the Court to declare the agreement void in which case the government could then prosecute her for all criminal offenses she might have committed.

Pursuant to this plea agreement, Petitioner pleaded guilty on April 29, 2014, to all three counts.

On December 10, 2014, the probation office filed a draft presentence investigation report ("PSR"). Petitioner's attorney filed an objection to that draft on December 22, 2014. Two days later he filed a revised objection. On December 31, 2014, he filed a second revised objection.

The probation office then filed its final PSR, addendum, and sentencing recommendation. The addendum identifies only one objection made on behalf of Petitioner: an objection to a two-level increase for abuse of a position of trust.

At the sentencing hearing, the Court accepted Petitioner's guilty pleas to Counts 1, 2, and 3, and sentenced her to a prison term of 46 months. Neither Petitioner nor her attorney raised any arguments at that hearing regarding relevant conduct or the amount of controlled substances at issue. The Court entered the judgment on January 23, 2015.

On January 21, 2016, Petitioner moved for relief under 28 U.S.C. § 2255. At her request, the Court appointed counsel for her. Court-appointed counsel entered an appearance, but moved to withdraw several months later on the grounds that there "is no basis in law or fact" for proceeding in this case under 28 U.S.C. § 2255 "that is not frivolous." (Mot. Withdraw, DE 83 at 1.)

**B.     Law: 28 U.S.C. § 2255**

Section 2255 of Title 28 of the United States Code provides that a Court may vacate, set aside, or correct a sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255.

Relief under § 2255 is limited. "[R]elief under § 2255 is an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process." *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007). Thus, § 2255 relief is limited to correcting errors of constitutional or jurisdictional magnitude or errors constituting fundamental defects resulting in complete miscarriages of justice. *E.g.*, *Kelly v. United States*, 29 F.3d 1107, 1112 (7th Cir. 1994), overruled on other grounds by *United States v. Ceballos*, 302 F.3d 679 (7th Cir. 2002). "A § 2255 motion is not a substitute for a direct appeal." *Coleman v. United States*, 318 F.3d 754, 760 (7th Cir. 2003).

When considering a § 2255 motion, the district court reviews the record and draws all reasonable inferences in favor of the government. *See Carnine v. United States*, 974 F.2d 924, 928 (7th Cir. 1992).

When a defendant makes a guilty plea knowingly and voluntarily, his waiver of appeal is enforceable. *Solano v. United States*, 812 F.3d 573, 577 (7th Cir. 2016). A defendant can also waive his right to collateral review as part of a plea agreement. *Id.* ("As part of a plea agreement,

3

a defendant may validly waive his right to challenge his conviction and sentence on direct appeal or collateral review under 28 U.S.C. § 2255."). Such waivers are generally enforced unless the plea agreement was involuntary, the court relied on a constitutionally impermissible factor, the sentence exceeded the statutory maximum, or the defendant claims ineffective assistance of counsel in connection with negotiation of the plea agreement. *Keller v. United States*, 657 F.3d 675, 681 (7th Cir. 2011).

Under Rule 8(a) of the Rules Governing Section 2255 Proceedings, the court must determine whether an evidentiary hearing is warranted. Not every petition warrants a hearing. *Boulb v. United States*, 818 F.3d 334, 339 (7th Cir. 2016). Here, the record before the Court conclusively reveals Rosenberg is not entitled to re-sentencing, so no hearing is necessary.

**C.     Discussion**

Petitioner asserts two grounds for relief: ineffective assistance of counsel and violation of due process.

Specifically, Petitioner claims the attorney who represented her during the plea negotiations and the sentencing hearing rendered ineffective assistance of counsel by:

1) withdrawing objections to the PSR regarding relevant conduct;

2) failing to advise Petitioner regarding relevant conduct; and

3) failing to secure a medical expert witness to review patient files pertaining to relevant conduct.

Petitioner also claims the government's failure to show that the relevant-conduct prescriptions had no legitimate medical purpose deprived her of due process.

**(1)** *Ineffective assistance of counsel*

To prevail on this claim, Petitioner must show deficient performance and prejudice:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984).

Petitioner bears a heavy burden. *United States v. Donaldson*, 978 F.2d 381, 394 (7th Cir. 1992). Courts "evaluate counsel's performance with a high degree of deference and without the distorting effects of hindsight." *Bond v. United States*, 77 F.3d 1009, 1012 (7th Cir. 1996).

(a) *Deficient performance*

Petitioner claims many of the prescriptions included as relevant conduct in the sentencing process were legitimate prescriptions. She claims her attorney rendered ineffective assistance of counsel by failing to object to the PSR's account of the relevant conduct, failing to advise her regarding relevant conduct before she entered the plea agreement, and failing to secure a medical expert witness to review the patient files pertaining to the relevant conduct.

But by her own account Petitioner chose to forgo challenging the relevant conduct. The parties filed the plea agreement on February 28, 2014. Petitioner pleaded guilty at a hearing on April 29, 2014. Then the probation officer prepared a draft PSR. According to Petitioner's affidavit, her attorney called her after he received the draft PSR. (Aff. Rosenberg, DE 55-1 at 1.) She claims that was the first time she heard anything about relevant conduct from her attorney.

5

He told her he thought the government's expert was susceptible to challenge, and she should review her own patient charts to determine whether and which prescriptions were provably legitimate. He told her that depending on what she found, they could object to the amount of prescription drugs counted as relevant conduct. She performed the requested review. She made her own determination regarding the percentage of prescriptions during the relevant time frame that were provably legitimate. She kept in regular contact with her attorney.

Then one afternoon her attorney called her to say the prosecutor offered a significant downward departure of six levels if Petitioner did not contest the relevant-conduct amounts. The prosecutor needed a response within about half-an-hour.

Petitioner told her attorney that was not much time. By her account, her attorney told her that he can't tell her what to do, but this is a really good offer. After consulting with her attorney, Petitioner discussed the offer with a friend. Petitioner then called her attorney back and approved the deal: forgo contesting the relevant-conduct amounts in exchange for a six-level downward departure.

No doubt this negotiation involved pressure. Most do. But Petitioner alleges nothing to suggest that her attorney rendered ineffective assistance of counsel in connection with this negotiation.

To the contrary, on Petitioner's own account, her attorney investigated the government's expert witness, found some possible weaknesses, directed Petitioner to review patient files to attack relevant-conduct amounts, repeatedly consulted with her, told the prosecutor about a potential challenge to the relevant-conduct amounts, obtained an offer from the prosecutor, brought that offer to Petitioner, and did not force or coerce her to accept the offer.

6

Petitioner's attorney aided in developing a defense theory that contributed to an offer from the government that was good enough that Petitioner decided to accept it. Petitioner might think that "everything [she] had done with reviewing the files was all for nothing." (Aff. Rosenberg, DE 55-1 at 2.) But that is not true, by her own account. Her attorney's repeated consultations with her regarding relevant conduct, and her review of the files on the advice of counsel, contributed to securing the favorable departure offer from the government, and placed her in a position to make an informed decision about that offer.

The record shows no deficient performance by her attorney. He withdrew the objection to the relevant-conduct amounts *at Petitioner's instruction*. Petitioner acknowledges she "telephoned Rosenblat and said to go ahead with the deal . . . ." (*Id.*) Petitioner decided to accept a 5K1.1 motion by the government for a six-level downward departure in exchange for her agreement not to contest the relevant-conduct amounts. She had a right to waive her objection to these amounts.

Petitioner's attorney did not render ineffective assistance of counsel by following his client's instructions regarding the deal. Indeed, failing to accept the offer as instructed by his client, and persisting in objections to the relevant-conduct amounts against her express instructions, would arguably have constituted ineffective assistance of counsel, malpractice, and unethical conduct. Petitioner had an opportunity to object, and she specifically agreed to forgo objecting in exchange for the six-level downward departure.

Moreover, any failure to advise Petitioner regarding relevant conduct before she accepted the plea agreement,[1] and any failure to secure a medical expert witness, were cured by

---

[1] Petitioner claims her attorney failed to advise her of the possible impact of relevant conduct on the sentencing guidelines range when she was deciding whether to accept her plea agreement.

Petitioner's agreement—after entering the plea agreement and pleading guilty at the hearing—to waive objections to the relevant-conduct amounts in exchange for a six-level downward departure. By her own account, Petitioner entered this subsequent agreement after multiple consultations with her attorney about relevant conduct, after reviewing her patient files regarding relevant conduct, and after knowing she lacked a medical expert witness. She could have chosen to contest relevant conduct, she could have insisted on securing an expert, she could even have attempted to rescind the plea agreement and change her plea back to not guilty. But she did not. Instead, she chose to accept the subsequent agreement to waive relevant-conduct objections in exchange for a six-level downward departure.

Besides, as demonstrated below, fighting relevant conduct made no mathematical sense. At best, she would have won a Pyrrhic victory, avoiding a six-level relevant-conduct increase at the cost of losing a six-level 5K1.1 downward departure and, potentially, a three-level reduction for acceptance of responsibility.

In sum, Petitioner alleges nothing to show that her attorney's performance was deficient; she alleges nothing to show that her attorney "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.

---

But in the plea agreement itself, Petitioner said she understood "that the Court will determine all matters, whether factual or legal, relevant to the application of the sentencing guidelines including . . . relevant conduct . . . ." (Plea Agreement, DE 2 at 3.) And Petitioner also said her attorney had "done all that anyone could do to counsel and assist me . . . ." (*Id.* at 6.) Moreover, at her change-of-plea hearing, she said she had had enough time to talk with her attorney and was fully satisfied with his advice. (Tr. Plea, DE 65 at 11.) She also said she had read the plea agreement, she understood it, and there was nothing in it she didn't understand. (*Id.* at 13–14.)

(b) *Prejudice*

Moreover, Petitioner alleges nothing to show prejudice. On her own account, even if her attorney's performance were deficient, his performance might have cost her a six-level increase in her base offense level, but his performance gained her a six-level 5K1.1 downward departure and preserved her three-level reduction for acceptance of responsibility.

In other words, she essentially asks the Court to conduct another sentencing hearing at which she will have the chance to contest the relevant-conduct amounts with the hope of reducing her base offense level by six, which will allow the government the opportunity to retract its requests for a six-level 5K1.1 downward departure and for a three-level reduction for acceptance of responsibility.

The math does not compute for Petitioner:

- According to the presentence investigation report, Petitioner illegally distributed 2,161,389 hydrocodone pills. (PSR, DE 39 at 9.)
- This relevant-conduct amount of 2,161,389 hydrocodone pills results in a base offense level of 30, because section 2D1.1(5) of the 2014 Sentencing Guidelines puts the base offense level for 1,000,000 units or more of Schedule III Hydrocodone at 30.
- Petitioner seems to claim she could prove 85% of these prescriptions were legitimate. The remaining 15% percent of 2,161,389 hydrocodone pills is 324,208.35 hydrocodone pills.
- The relevant-conduct amount of 324,208.35 hydrocodone pills would result in a base offense level of 24, because section 2D1.1(8) of the 2014 Sentencing

9

Guidelines puts the base offense level for 100,000 but less than 400,000 units of Schedule III Hydrocodone at 24.
- So, on her own account, Petitioner would lose the six-level 5K1.1 downward departure, and would potentially lose the three-level reduction for acceptance of responsibility, in exchange for a chance to prove that her base offense level should be six levels lower.

Fighting and winning a relevant-conduct objection might have reduced Petitioner's base offense level by six levels at best, at the potential cost of a nine-level increase. Petitioner's claims border on the frivolous.

Petitioner has not alleged deficient performance by her attorney or any resulting prejudice. Therefore, her claims of ineffective assistance of counsel fail, and she is not entitled to relief under § 2255.

**(2)** *Due process*

Petitioner also claims the government's failure to show that all relevant-conduct prescriptions were illegitimate gave rise to a due process violation. In her plea agreement, however, Petitioner waived her right to contest her sentence, with an exception:

> I expressly waive my right to appeal or to contest my conviction and my sentence or the manner in which my conviction or my sentence was determined or imposed, to any Court on any ground, including any claim of ineffective assistance of counsel unless the claimed ineffective assistance of counsel relates directly to this waiver or its negotiation, including any appeal under Title 18, United States Code, Section 3742 or any post-conviction proceeding, including but not limited to, a proceeding under Title 28, United States Code, Section 2255 . . . .

(Plea Agreement, DE 2 at 5–6.) She confirmed these waivers at her change-of-plea hearing. (Tr. Plea, DE 65 at 28–30.) Therefore, Petitioner waived her claim of due process violation.

But regardless of this waiver, she also agreed to forgo challenges to the relevant-conduct prescriptions in exchange for a six-level downward departure.

Challenges to relevant-conduct amounts are waivable. *See United States v. Scanga*, 225 F.3d 780, 783 (7th Cir. 2000). She agreed to waive them.

Accordingly, Petitioner's claim of due process violation fails as well, and she is not entitled to relief under § 2255.

**D.     Denial of certificate of appealability**

Under Rule 11(a) of the Rules Governing Section 2255 Proceedings, a court must either issue or deny a certificate of appealability when it enters a final order adverse to a petitioner.

A petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *See Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). To make a substantial showing, a petitioner must show that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation omitted).

Here, reasonable jurists could not so debate. Therefore, the Court denies a certificate of appealability.

**E. Forfeiture**

Petitioner also raises issues regarding forfeiture. She seeks the return of a portion of the seized funds.

The government stated it is entitled to $57,127.17 plus any accrued interest on that amount. The government does not object to returning to Petitioner the amount of seized funds in excess of $57,127.17 plus accrued interest on that amount.

The government stated it needed further documentation regarding account activity from June 1, 2015, through June 23, 2016, to determine the amount of interest and deposits made by Petitioner after the criminal proceedings were complete.

The Court orders the government to file a statement by July 7, 2017, regarding:

1) whether the government obtained the information it needed;

2) a computation showing:

   a. the exact amount of money the government claims it should keep as the principle amount forfeited;

   b. the exact amount of money the government claims it should keep as interest on the principle amount forfeited; and

   c. the exact amount of money the government should return to Petitioner;

3) the best manner for the government to return funds to Petitioner; and

4) all other forfeiture issues.

Petitioner Rosenberg may file a response by July 21, 2017. The Court informs Petitioner that this response and all further documents filed by her must be typed in at least 12-point font, double-spaced, or the Court will strike them.

**F.     Patient records**

Petitioner also raises issues regarding patient records. To the extent these issues involve Petitioner's § 2255 motion, they are now moot.

To the extent these issues involve Petitioner's need to notify the patients of her incarceration, and to the extent there are other germane issues, the Court orders Petitioner to file a statement by July 7, 2017, regarding:

1) an explanation of the Court's jurisdiction, authority, and basis to enter any orders regarding the records given the denial of the § 2255 motion;

2) a description of the records she still needs or is entitled to, including the format of these records;

3) an explanation of why she still needs or is entitled to these records;

4) the identities of all persons or entities currently in possession of these records;

5) the identity of the person or entity from whom she seeks the records;

6) an explanation of why she cannot obtain the records from this person or entity;

7) an explanation of why she cannot obtain the records from all other persons or entities currently in possession of these records;

8) whether any other entity or individual has, or could, notify the patients of her incarceration;

9) whether she has asked any entity or individual to notify the patients of her incarceration, and the results of that request; and

10) all other relevant issues pertaining to the patient records, and any other records.

If Petitioner no longer seeks these records, she may simply not file a statement by July 7, 2017. Again, the Court informs Petitioner that the statement and all further documents filed by her must be typed in at least 12-point font, double-spaced, or the Court will strike them.

The government may file a response regarding the records by July 21, 2017.

**G.  Conclusion**

The Court **DENIES** the § 2255 motion (DE 55).

The Court **ORDERS** briefing as stated.

**SO ORDERED** on June 22, 2017.

s/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN
UNITED STATES DISTRICT JUDGE
